Receipt # 062702

ORIGINAL

FILED
APR 11 2005
U.S. COURT OF
FEDERAL CLAIMS

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

A.A.B JOINT VENTURE
P.O. Box 37
Rosh Ha' Aiyn
68100 Israel,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

05- 466C

**COMPLAINT TO DIRECT THE UNITED STATES OF AMERICA TO ISSUE A CONTRACTING OFFICER'S DECISION BY JUNE 15, 2005**

Plaintiff, A.A.B Joint Venture, by its undersigned attorneys, requests that the Court direct the United States of America to issue a contracting officer's decision on the DSB Certified Claim on or before June 15, 2005, and for grounds therefor states as follows:

I. **THE PARTIES**

1. Plaintiff A.A.B Joint Venture ("Contractor" , "Joint Venture" or "JV") is a joint venture of co-venturers ABB Susa, Inc., A. Arenson LTD and Baran Group. Under the Joint Venture agreement the parties are equal equity partners, ABB Susa, Inc. is managing partner. The Joint Venture was formed to bid on, and perform, a contract with the United States of America, which contract is the subject of this complaint.

2. Defendant the United States of America (the "Government") is a party to the contract at issue acting by and through the United States Army Engineer Corps – Europe ("USACE"), located in Wiesbaden, Germany.

## II. JURISDICTION

3. This complaint seeks an Order directing the contracting officer to issue a contracting officer's final decision on or before June 15, 2005. The Court has jurisdiction over this action pursuant to 41 U.S.C. § 605(c)(4) ("Contract Disputes Act") and 28 U.S.C. § 1491.

## III. PERTINENT FACTS

4. On June 5, 2001 the J/V and the Government entered into Contract No. DACA90-01-C-0043 in the amount of $124,089,176.

5. The project is described in detail in the complaints noted in the accompanying RCFC 40.2 Notice of Directly-Related Cases.

6. The amount of time claimed by the government to issue the contracting officer's decision on the DSB Claim is unreasonable, would result in piece meal litigation and/or would unreasonably delay the proper resolution of all the time extension requests which are pending before this Court while allowing the Government to withhold in excess of $5 million in liquidated damages.

7. The pertinent facts supporting plaintiff's request are set forth below, followed by legal argument.

### A. DSB CLAIM

8. As noted in the complaints filed with the Court, the project, known as the Nachshonim Military Storage Base, included construction of over 200 buildings, 119 of which were described in the contract as Dry Storage Buildings ("DSBs"). These DSBs were designed to house heavy military equipment in a ready state within a controlled climate, minimizing environmental impacts from temperature and humidity.

9. The DSBs were constructed with a concrete foundation and partial concrete walls upon drilled/cast piles, a structural steel roof (conventional or space frame type), with external insulated "sandwich" panel cladding on both the roof and walls.

10. The contract required that the insulated panel cladding (totaling 3 miles of a seal per DSB) be placed on the exterior of the structural steel, while at the same time requiring the building to be almost hermetically sealed. The claim alleges that the combination of the placement of the panel cladding on the exterior of the structural steel and 3 miles of seal per DSB per the contract design and the specified requirement that the building be almost hermetically sealed, resulted in a defective/impossible specification.

11. The Government was put on notice of this issue during the pre-bid phase of the contract in 2001.

12. The JV attempted to comply with the impossible specifications with disastrous results including (1) significant unanticipated research and development; (2) concession of other meritorious claims; and (3) significant delay to the project schedule with resulting extended performance costs.

13. It took until late 2003 for the issue to be resolved such that plaintiff could release the DSBs for mass production.

14. On July 8, 2004 plaintiff submitted a request for equitable adjustment ("REA") entitled "DSB Pressure Test Research and Development Effort." The REA included a summary of the request, discussion of the unanticipated research and development effort which the JV was required to undertake, and a critical path method analysis. Based thereon, the REA requested 205 calendar days of delay attributable to the extra effort required to conduct research and development efforts to meet the unachievable specification requirement that directly

impacted the start of the critical pilot DSB envelope milestone activity. The REA addressed only the delay caused by the DSB pressure test through November 10, 2002. The JV expressly reserved the right to assert entitlement to additional delay caused by the DSB pressure test for other periods of contract performance and the right to submit a claim and or REA for additional costs pertaining to the DSB pressure test issue, including but not limited to direct costs and extended performance costs. See attached REA dated July 8, 2004 (Exhibit 1).

15. As of this date, the Government has not responded to the REA, nor has it, on information and belief, produced a schedule analysis or any other analysis of the REA.

16. On February 11, 2005 the JV submitted its Certified DSB Claim to the Government in the amount of $11,239,552 and a 299 calendar day compensable time extension. The Joint Venture specifically requested a contracting officer's decision in accordance with the contract and the Contract Disputes Act. (Exhibit 2).

17. The compensable delay claimed relates to the period of time from March 8, 2002 through November 2003.

18. By letter dated March 16, 2005 the contracting officer informed undersigned counsel that the contracting officer would issue its decision by September 23, 2005. The contracting officer noted that this period of time was necessary "due to the complexity of this claim <u>and its interrelation to your previously submitted claims which require an in-depth analysis of the contract schedule</u>." Emphasis added (Exhibit 3).

19. By letter dated March 23, 2005 the undersigned advised the contracting officer that the Joint Venture considered the September 23, 2005 date to be an unreasonable amount of time and that it would take all legal action in response thereto it deemed appropriate. (Exhibit 4).

20. The period of time for issuance of the decision claimed by the Government is 224 days from the filing of the Certified Claim and 442 days from the filing of the Request for Equitable Adjustment.

B. **TCN CLAIM**

21. By letter dated July 30, 2004 the Joint Venture submitted its Certified Claim to the Government pertaining to TCN labor and requested a contracting officer's final decision. (Exhibit 5).

22. In violation of the Contract Disputes Act the contracting officer did not within 60 days of receipt of the Certified Claim either (a) issue a decision, or (b) notify the Joint Venture of the time within which a decision would be issued.

23. The Joint Venture filed a complaint with this Court pursuant to 41 U.S.C. § 605(c)(5), COFC Case No. 05-114C, based upon the contracting officer's failure to issue a decision within the period required or notify the Joint Venture of the time within which a decision would be issued.

24. The complaint was filed on January 14, 2005 and sought $8,086,367 and a compensable time extension of 103 calendar days based upon events which occurred between April 2003 and November 2003.

25. On March 15, 2005 the government filed its answer to the TCN Labor Claim. The Joint Preliminary Status Report in this case is due on May 6, 2005

C. **ERRONEOUS REJECTION OF ALTERNATE PAINT SYSTEM**

26. By letter dated August 3, 2004 the Joint Venture submitted its Certified Claim for the erroneous rejection of the paint system to the Government and requested a contracting officer's final decision. (Exhibit 6).

27. In violation of the Contract Disputes Act the Government did not within 60 days of receipt of the Certified Claim either (a) issue a decision, or (b) notify the Joint Venture of the time within which a decision would be issued.

28. The Joint Venture filed a complaint with this Court, pursuant to 41 U.S.C. § 605(c)(5), COFC Case No. 05-114C, based on the Government's failure to issue a decision within the period required or notify the Joint Venture of the time within which a decision would be issued.

29. The complaint was filed on January 14, 2005 and sought $3,526,648 and a 129 calendar day compensable time extension based upon events which occurred between December 2003 and April 2004.

30. On March 15, 2005 the government filed its answer to the Erroneous Rejection of Paint System Claim. The Joint Preliminary Status Report in this case is also due on May 6, 2005.

D. **GOVERNMENT WITHHOLDING OF LIQUIDATED DAMAGES**

31. As stated in Paragraphs 8 and 13 of this complaint, on July 30, 2004 and August 3, 2004 the JV submitted certified claims requesting time extensions for TCN Labor and Erroneous Rejection of Paint System. On July 8, 2004 the Joint Venture submitted a request for equitable adjustment requesting a 205 day time extension for the DSB pressure test claim.

32. Through the end of January 2005, a period of over six months, the Government failed to respond to any of the aforementioned time extension requests.

33. In spite of that, by letter dated January 31, 2005 the Government claimed that the Joined Venture was subject to liquidated damages in the amount of $21,000 for each day

of delay past December 19, 2004. The letter further indicated that the assessment of liquidated damages would be reflected in future progress payments. (Exhibit 7).

34. By letter dated February 10, 2005 the undersigned informed the Government that it had failed to comply with its obligation to act upon the JV's time extension requests promptly. The letter noted that the Government had not acted upon any of the JV's certified claims for time extension for over six months; and that any assessment of liquidated damages combined with the protracted delay in acting upon the JV's requests for time extensions would constitute an acceleration order. (Exhibit 8).

35. By letter dated February 11, 2005 the Government withheld $252,000 in liquidated damages from the Joint Venture's January 2005 progress billing, which covered liquidated damages for December 2004. The liquidated damages were assessed from December 20, 2004 through December 31, 2004. (Exhibit 9).

36. By letter dated February 15, 2005, <u>five days after the undersigned's letter contending that the failure to promptly respond to time extension requests was improper</u>, the Government informed the Joint Venture that "The Government has completed its review of the claims for time extensions associated with the TCN and panel cladding claims and has determined that no time extension is warranted." No analysis was provided, nor as of this date has the government supplied any analysis supporting its conclusion that no time extension is warranted. The Government also stated in its letter of February 15, 2005 that it would not defer assessment and collection of liquidated damages pending the outcome of its review of claims for time extension. (Exhibit 10).

37. The Government's denial of the TCN time extension request was provided 6½ months after the certified claim was submitted, five days after undersigned counsel's letter, and to this date a contracting officer's final decision has not been issued.

38. The Government's denial of a time extension for the erroneous rejection of the alternate paint system claim was also provided approximately 6½ months after the certified claim was submitted, five days after undersigned counsel's letter, and to this date no CO decision has been provided or any analysis provided to the plaintiff.

39. By letter dated March 10, 2005 the Government withheld $651,000 in liquidated damages from the Joint Venture's February 2005 progress billing, covering liquidated damages for January 2005. (Exhibit 11).

IV. **ARGUMENT**

40. For the reasons discussed below the Government's position that it is entitled to issue a contracting officer's decision 224 days from the filing of the certified DSB claim and 442 days from the filing of the REA is patently unreasonable.

41. It is well established that contracting officer's decisions must be issued within a reasonable time of receipt, "taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor. 41 U.S.C. § 605(c)(3). Further, the Joint Venture may request this Court to direct the contracting officer to issue a decision in a specified period of time. 41 U.S.C. § 605(c)(4).

42. Board and Court decisions make it clear that what constitutes a reasonable time is for the tribunal to decide on a case-by-case basis depending upon the nature of the claim and the information submitted by the contractor.

43. Pertinent board decisions clearly establish that even without considering the additional factors discussed in paragraphs 51 through 55, herein, the September 23, 2005 date is unreasonable.

44. In Washington Construction Co., 96-2 BCA ¶ 28,582 the contractor submitted a certified REA on February 5, 1996 which included five claim items. On April 3, 1996 the Government's project engineer agreed to negotiate one of the items and denied the remaining four claims. On April 10, 1996 the contractor requested a contracting officer's decision on all of the claims. By letter dated April 22, 1996 the Government advised the contractor that it would issue a decision on April 4, 1997. Thereafter by letter dated July 23, 1996 contractor requested that the Board direct the contracting officer to issue a decision by September 1, 1996 pursuant to 41 U.S.C. § 605(c)(4).

45. The Government sought to justify its position based on the fact that the claim was for $2.9 million and involved four separate complex claim items with multiple issues involved in each. The Government also argued that because one claim was for delay and impact cost an as-built schedule would have to be prepared and compared with the schedule the contractor planned to follow in the prosecution of the work. The Government also noted that if entitlement was found it would be required to perform a cost analysis and possibly an audit. The Government further argued that the contractor did not submit adequate supporting data with the claim causing the contract engineer to perform considerable investigation and research.

46. The Board rejected the Government's arguments. It concluded that even recognizing that performing delay and cost analyses, drafting a decision and obtaining review are time consuming, a reasonable period for rendering a decision would be December 6, 1996, ten months from the date of the submission of the REA.

47. Similarly in Veco, Inc., 96-1 BCA ¶ 28,108 the DOT Board of Contract Appeals held that a reasonable time for a contracting officer to render a decision on a $5.9 million claim which involved seven subcontractors and included 23 volumes of supporting data was 4½ months after the request had been converted to a claim and one year from the date the REA was submitted.

48. Significantly in both Washington Construction and Veco, the board noted that in making the determination of what constitutes a reasonable time, the time between the submission of a request for an equitable adjustment until its conversion to a claim should not be overlooked.

49. The DSB claim requests $11,239,552, an amount greater than that claimed in Washington Construction and Veco. However, the DSB claim includes only two subcontractors, compared to seven subcontractors in Veco; and consists of a 30 page narrative with 34 exhibits, contained in one small volume, as opposed to the 23 volumes of supporting data submitted in Veco. In addition, while the claim in Washington Construction involved four separate complex claim items with multiple issues involved in each claim, the DSB claim is essentially a single issue claim. Thus, there is no rational basis to allow the Government any more time that that deemed reasonable in Washington Construction and Veco.

50. Further, the reasonableness of the September 23, 2005 date must be viewed against the Joint Venture's submission of its REA on July 8, 2004, not the February 11, 2005 date for the certified claim. Based thereon, plaintiff requests that the Court determine, consistent with Veco and Washington Construction, that a reasonable time for issuance of the CO decision is 10 to 12 months after the submission of the REA. Thus, the reasonable date for issuance of the decision would be May 8, 2005 through July 8, 2005, or on a median basis June

15, 2005. The June 15, 2005 date would also give the Government over four months from the date the certified claim was filed, virtually the same period of time deemed reasonable in Veco.

51. In addition to the foregoing, there are other reasons why the September 23, 2005 date is unreasonable. As recognized by the government itself, the time analysis for the DSB claim is interrelated with the Joint Venture's other time extension requests. (Exhibit 4). Notably, the TCN claim requests a 103 calendar day compensable time extension for events occurring from April 2003 through November 2003, a period concurrent with the DSB time extension request. Therefore, in order for the Court to properly resolve all relevant time extension issues all three claims should proceed under a single consolidated scheduling order. It would be inefficient, unduly costly, and result in piece meal litigation for discovery to proceed on the TCN and paint claims, with discovery on the DSB claim to follow, delayed by at least six months.

52. Requiring the Government to issue the DSB decision by June 2005, will allow the cases to be consolidated and proceed under a unified scheduling order without causing undue delay. Should the Court allow the September 23, 2005 date to stand, it is inescapable that the DSB claim will not even be in a posture for the submission of a JPSR until the spring of 2006; thereby creating a Catch-22 situation whereby either the TCN and paint claims would be delayed for six to eight months or would have to proceed separately under two scheduling orders with the problems and inefficiencies noted above.

53. Plaintiff submits that these difficulties can be avoided by requiring the Government to issue a decision by June 2005. This would avoid the negative consequences, would be consistent with Veco, and Washington Construction and would allow the cases to proceed, without undue delay, in a consolidated efficient manner.

54. Finally, the Government's insistence upon withholding liquidated damages under these circumstances and the negative consequences flowing therefrom to the plaintiff, would be exacerbated by allowing the Government until September 23, 2005 to issue a decision. As discussed above, the Government did not respond to the time extension requests for TCN labor and the paint claim for over six months. In a hasty response to the undersigned's February 10, 2005 letter the Government, five days later, without providing any justification or analysis, advised the Joint Venture that both of those requests were without merit. Further, although the Government has known since July 8, 2004 that the Joint Venture was claiming over 200 days of time extension for the DSB claim, it has not responded, nor has it apparently performed any schedule analysis. As of the date of the filing of this complaint over eight months has transpired and based on the Government's March 16, 2005 letter no such analysis has been performed. Plaintiff submits that this is a further breach by the Government of its duty to promptly respond to time extension requests.

55. Thus, the Government has failed to meet its obligations with regard to all the time extension requests, has to this date failed to supply any analysis to the Joint Venture and apparently has not done any such analysis with respect to any of the claims. In spite of these failings, the Government, in what can only be described as arbitrary and capricious conduct, has deemed it appropriate to withhold over $900,000 in liquidated damages from the Joint Venture. Should, the Government continue these withholdings through September 2005 the Government, will have withheld almost $6 million. This would be extremely prejudicial to plaintiff and constitutes an additional reason for the Court to grant this complaint and expedite resolution of these significant issues.

## V. CONCLUSION

For all the reasons set forth above, plaintiff requests that the Court pass an Order directing the contracting officer to issue a final decision on the DSB claim on or before June 15, 2005.

Respectfully submitted,

Brian Cohen
BELL, BOYD & LLOYD, PLLC
1615 L Street, NW
Suite 1200
Washington, D.C. 20036
(202) 466-6300
Attorney for Appellant

Of Counsel:

Robert J. Sciaroni
Lawrence M. Prosen
BELL, BOYD & LLOYD, PLLC
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

Devorah Patt
Zell Goldberg & Co.
31 Mishol Hadekalim
Jerusalem 27278 Israel